Joseph W. Ozmer II (SBN 316203)
jozmer@kcozlaw.com
Kristapor Vartanian (SBN 275378)
kvartanian@kcozlaw.com
J. Scott Carr (SBN 136706)
scarr@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
333 S. Grand Avenue, Suite 2225
Los Angeles, CA 90071
Telephone: (213) 493-3980
Facsimile: (404) 400-7333

Attorneys for Defendant
Marriott International, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SHACHNO and JACKSON GAGE, individuals, on behalf of themselves and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MARRIOTT INTERNATIONAL, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: 3:22-cv-01215-TWR-JLB<br><br>**DEFENDANT'S OPPOSITION TO MOTION TO REMAND**<br><br>[*Filed concurrently with Supplemental Declaration of J. Scott Carr*]<br><br>Hearing Date:  December 1, 2022<br>Hearing Time:  1:30 p.m.<br>Hearing Place:  Courtroom 3A<br>Judge:  Hon.  Todd W. Robinson |

1

## **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2

   A.  Plaintiff Shachno's PAGA Case Alleging the Same Violations...................................... 2

   B.  Plaintiffs File the Present Action Against MII in State Court ...................................... 2

   C.  MII's Notice of Removal and Supporting Evidence ...................................................... 3

   D.  Plaintiffs Refuse to Respond to MII's Discovery Seeking Violation Rates ................ 7

   E.  Shachno Provides Evidence in *Shachno I* Confirming the AIC is Met Here.............. 9

      1.   The AIC on the Minimum Wage Claim Exceeds $2.6 Million ...........................10

      2.   The AIC on the Rest Period Claim Exceeds $7.6 Million.................................11

      3.   The AIC on the Waiting Time Claim Exceeds $4.6 Million.............................11

      4.   The AIC on the Wage Statement Claim Exceeds $3 Million .............................12

      5.   Summary of AIC Using Plaintiffs' Methodology in *Shachno I* ...........................12

III.  LEGAL STANDARD.............................................................................................12

IV.  ARGUMENT .........................................................................................................14

   A.  MII's Minimum Wage AIC Calculation Is Conservative and Reasonable ................14

      1.   Plaintiffs' Ignore Their Own Express Allegations .................................14

      2.   Plaintiff's Position in *Shachno I* Further Supports MII's Calculation...................15

   B.  MII's Meal and Rest Break AIC Calculations Were Reasonable and Low ...............15

      1.   MII's Initial Calculations Were Reasonable.....................................15

      2.   Plaintiff's Complaint and Position in *Shachno I* Show the CAFA AIC
         Requirement is Met Based on the Rest Break Claim Alone.............................16

   C.  MII's Wage Statement AIC Calculation Is Reasonable and Low ...............................17

      1.   MII's Initial Calculations Were Reasonable.....................................17

      2.   Plaintiff's Position in *Shachno I* Confirms MII's Calculation Was Low ..............18

   D.  MII's Waiting Time AIC Calculation Is Reasonable....................................................18

   E.  MII's Cellphone Reimbursement AIC Is Reasonable and Low ..................................20

   F.  MII's Attorneys' Fees Calculations Were Reasonable and Low.................................21

   G.  Plaintiffs' Failure to Provide Any Alternative Evidence or Calculations Further
      Supports MII's Showing that the AIC Is Satisfied Here .............................................23

V.   CONCLUSION.......................................................................................................23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ibarra v. Manheim Ins., Inc.*,
5
    775 F.3d 1193 (9th Cir. 2015).............................................................. 13

6

*Arias v. Residence Inn by Marriott*,
7
    936 F.3d 920 (9th 2019)..........................................................13, 16, 17

8

*Avila v. Kiewit Corp.*,
    789 F. App'x 32 (9th Cir. 2019) .......................................................... 13
9

*Brumbach v. Hyatt Corp.*,
10
    No. 20-cv-2231-WQH-KSC, 2021 WL 926692 (S.D. Cal. Mar. 11. 2021) ............... 19

11

*Bui v. Mercedes-Benz USA, LLC*,
12
    No. 20-cv-1530-CAB-WVG, 2020 WL 12688081 (S.D. Cal. Sept. 30, 2020) ........... 22

13

*Cavada v. Inter-Continental Hotels Group, Inc.*,
    No. 19cv1675, 2019 WL 5677846 (S.D. Cal. Nov. 1, 2019) .....................7, 14, 16, 20
14

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
15
    135 S. Ct. 547 (2014) ........................................................................ 12, 13

16

*Fritsch v. Swift Transp. Co. of Az., LLC*,
17
    899 F.3d 785 (9th Cir. 2018)................................................................ 21, 22

18

*Gagne v. Zodiac Maritime Agencies, Ltd.*,
19
    274 F. Supp. 2d 1144 (S.D. Cal. 2003)...................................................... 15, 18

20

*Garcia v. Acushnet Co.*,
21
    No. 3:21-cv-01581-BEN-BGS, 2022 WL 1284820 (S.D. Cal. Apr. 29, 2022)........... 14

22

*Greene v. Harley-Davison, Inc.*,
    965 F.3d 767 (9th Cir. 2020)................................................................ 16
23

*Jauregui v. Roadrunner Transp. Servs., Inc.*,
24
    28 F. 4th 989 (9th Cir. 2022) .............................................................. 13

25

*Long v. Destination Maternity Corp.*,
26
    No. 15cv2836-WQH-RBB, 2016 WL 1604968 (S.D. Cal. April 21, 2016)............... 16

27

*Mortley v. Express Pipe & Supply Co.*,
    No. SACV 17-1938-JLS-JDE, 2018 WL 708115 (C.D. Cal. Feb. 5, 2018)............... 20
28

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
No. EDCV 19-0839-DOC, 2019 WL 7987117 (C.D. Cal. June 21, 2019) ..... 18, 19, 23

*Olson v. Becton, Dickinson and Co.*,
No. 19cv865-MMA (BGS), 2019 WL 4673329 (S.D. Cal. Sept. 25, 2019) ......... 13, 23

*Ramirez v. Benihana Nat'l Corp.*,
No. 18-cv-05575-MMC, 2019 WL 131843 (N.D. Cal. Jan. 8, 2019)......................... 21

*Ramirez v. Carefusion Resources, LLC*,
No. 18-cv-2852-BEN-MSB, 2019 WL 2897902 (S.D. Cal. July 5, 2019)................. 18

*Ramos v. Schenker, Inc.*,
No. 5:18-cv-01551-JLS-KK, 2018 WL 5779978 (C.D. Cal. Nov. 1, 2018) .............. 21

*Rough v. Costco Wholesale Corp.*,
No. 2:19-cv-01340-MCE-DB, 2020 WL 1158074 (E.D. Cal. Mar. 10, 2020)........... 20

*Salazar v. Johnson and Johnson Consumer Inc.*,
No. 2:18-cv-05884-SJO-E, 2018 WL 4560683 (C.D. Cal. Sept. 19, 2018) .... 13, 17, 21

*Salcido v. Evolution Fresh, Inc.*,
No. 2:14-cv-09223, 2016 WL 79381 (C.D. Cal. Jan. 6, 2016).................................... 14

*Sanders v. Old Dominion Freight Line, Inc.*,
No. 17cv2340-CAB-NLS, 2019 WL 1193836 (S.D. Cal. Mar. 8, 2018) ................... 19

*Vallejo v. Sterigenics U.S., LLC*,
3:20-cv-01788, 2021 WL 2685348 (S.D. Cal. June 29, 2021) .............................*passim*

*Varsam v. Lab. Corp. of Am.*,
No. 14cv2719 BTM (JMA), 2015 WL 4199287 (S.D. Cal. July 13, 2015) ............... 19

*Vasquez v. RSI Home Products, Inc.*,
No. 8:20-cv-01494-JWH-JDEx, 2020 WL 6778772 (C.D. Cal. Nov. 12, 2020) ........ 22

*Vikram v. First Student Mgmt., LLC*,
No. 17-cv-04656-KAW, 2017 WL 4457575 (N.D. Cal. Oct. 6, 2017) ....................... 18

**Rules**

Fed. R. Civ. P. 26................................................................................................................ 8

DEFENDANT'S OPPOSITION TO MOTION TO REMAND

## I. INTRODUCTION

Plaintiffs Matthew Shachno and Jackson Gage filed this putative class action in San Diego County Superior Court, seeking to represent *all* of Marriott International, Inc.'s ("Marriott" or "MII") *4400-plus* current and former non-exempt California employees over the past four years with respect to *10* alleged Labor Code violations. Notably, the present case is a "copycat" of a PAGA action Plaintiff Shachno has been pursuing against Marriott since July 2020 in San Diego County Superior Court— *Shachno v. Marriott Int'l, Inc.,* 37-2020-00024021-CU-OE-CTL ("*Shachno I*")— alleging the same Labor Code violations on behalf of the same group of employees. In their Complaint in the present case, Plaintiffs allege, *inter alia,* that:

- MII failed to pay Plaintiffs and the putative class members for "*several minutes*" they spent working off the clock each day satisfying MII's grooming standards;

- MII has an illegal rest break policy that prohibits employees from leaving the premises for rest breaks; and

- As a result of these and other alleged violations, Marriott inflicted wage statement violations on all putative class members and "waiting time" violations on all former-employee putative class members.

Based on these and other allegations, MII removed this case to this Court pursuant to the Class Action Fairness Act ("CAFA") based on a conservative amount in controversy ("AIC") calculation of **$11,102,793.75** *on only six of the ten claims.*

Plaintiffs filed a motion to remand ("Motion") challenging Marriott's AIC calculation, but Plaintiffs' Motion *entirely ignores* their above allegations and materially mischaracterizes Marriott's basis for removal. Moreover, after filing his Motion in *Shachno I*, Plaintiff Shachno submitted his own declaration, as well as that of a purported expert, wherein he:

- Asserts a 100% violation rate on the same rest break claim at issue in the present action, confirming that Plaintiffs are claiming that *all* of Marriott's non-exempt employees *suffer a rest break violation every day*;

1

- Asserts a 100% violation rate for the unpaid wage theories Plaintiffs assert here, contending employees spend *20 minutes per day* working off the clock due to MII's grooming standards and other alleged pre-/post-shift requirements; and

- Asserts 100% violation rates for the cellphone reimbursement claim, as well as his derivative wage statement and waiting time claims.

Based on this additional evidence, and using the same methodology used by Shachno's purported expert, Marriott has calculated a revised AIC in *excess of $18 million based on only 4 of the 10 claims at issue and exclusive of attorneys' fees.* Accordingly, MII respectfully requests that the Court deny Plaintiffs' Motion.

## II.   BACKGROUND

### A.   Plaintiff Shachno's PAGA Case Alleging the Same Violations

On July 13, 2020, Plaintiff Shachno filed *Shachno I*—a Private Attorneys General Act ("PAGA") case alleging Labor Code violations on behalf of all of MII's non-exempt employees in the state of California from March 10, 2019 through the present.  (Supplemental Declaration of J. Scott Carr ("Supp. Carr Decl.") Ex. 1).  As in the present case, *Shachno I* alleges that MII violated the Labor Code by failing to: (1) pay minimum wages; (2) pay overtime wages; (3) provide meal periods; (4) provide rest periods; (5) provide accurate wage statements; (6) reimburse employees for cell-phone and uniform expenses; (7) provide all wages due upon termination; and (8) provide all gratuities due to non-exempt employees.  (*Id.* ¶¶ 11-30.)  Plaintiffs' counsel in the present matter are the same counsel representing Plaintiff Shachno in *Shachno I.*

### B.   Plaintiffs File the Present Action Against MII in State Court

On May 23, 2022, Plaintiffs filed the instant Class Action Complaint against MII in San Diego County Superior Court re-alleging all of the claims at issue in *Shachno I*, as well as additional claims for alleged failure to properly pay sick pay wages and violation of California's Unfair Competition Law.  (Dkt. No. 1-2, Compl.) Plaintiffs here seek to represent a class of "all individuals who are or previously were

DEFENDANT'S OPPOSITION TO MOTION TO REMAND

employed by Defendant in California, including any employees staffed with Defendant by a third party, and classified as non-exempt employees (the "California Class") at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court (the "California Class Period")." (Dkt. No. 1-2 ¶ 5; *see also id*. ¶ 32 (same).) To support their claims here, Plaintiffs specifically allege, among other things, that:

- "Defendant required California Class Members to be in full compliance of Defendant's extensive personal appearance regulations and prepared to clock in upon arrival. As such, Plaintiffs and California Class Members were required by Defendant to spend ***several minutes off the clock*** preparing themselves for work in order to comply with Defendant's extensive personal appearance regulations." (Dkt. No 1-2, Compl. ¶ 9 (emphasis added).)

- "***Defendant's [rest break] policy . . . is unlawful*** based on Defendant's rule which states Plaintiffs and other California Class Members cannot leave the work premises during their rest period." (*Id.* emphasis added).)

- Defendant failed to provide "Plaintiffs and the other members of the California Class with complete and accurate wage statements . . . ." (*Id.* ¶¶ 19, 106.)

- "Defendant failed to reimburse Plaintiffs and the California Labor Code Sub-Class members for expenses which included, but were not limited to, costs related to using their personal cellular phones and costs related to purchasing and cleaning work uniforms . . . ." (*Id.* ¶ 110.)

Plaintiffs seek, for themselves and each of the 4,405 putative class members, an array of damages, including premium pay for meal and rest period violations, unpaid minimum and overtime wages, waiting time pay, penalties for non-compliant wage statements, unreimbursed expenses, and attorneys' fees. (*Id.* Prayer for Relief.)

## C.  MII's Notice of Removal and Supporting Evidence

Pursuant to CAFA, MII timely removed this lawsuit on August 18, 2022, showing that: (1) Plaintiffs and MII are residents of different states; (2) there are at

least 4,405 putative class members; and (3) Plaintiff's allegations create an AIC $11,102,793.75 on only six (6) of the ten (10) claims at issue. (Dkt. No. 1.)

In support of its AIC calculation, MII submitted the Declaration of Tiffany Schafer, Vice President of Human Resources. (Dkt. No. 1-7.) Ms. Schafer explained that she had access to, and had reviewed, employee data that MII created, maintained, and kept in the ordinary course of business. (*Id.* ¶ 2.) This included records for all of MII's non-exempt employees in California during the relevant time period, showing, *inter alia,* employee names, hire dates, and termination dates. (*Id.*) Ms. Schafer stated that these MII business records show that:

- MII employed a total of 4,405 putative class members in California from May 25, 2018 through July 22, 2022.

- For the period from May 23, 2019 (three years before the filing of Plaintiffs' Complaint) through July 22, 2022, at least 1,219 of the putative class members separated from employment.

- The total number of putative class members who received wage statements from MII from May 23, 2021 (one year before the filing of Plaintiffs' Complaint), through July 22, 2022 was 1,885.

- The putative class members worked a total of 8,281,639 non-overtime hours from May 23, 2018 through July 22, 2022.

- At all times from May 23, 2018 through the present, MII has paid the putative class members at least the applicable California minimum wage, and in most instances a higher hourly rate of pay.

(*Id.* ¶¶ 4, 5.) Ms. Schafer also confirmed that this (and other) data regarding MII's non-exempt California employees was provided to MII's counsel. (*Id.* ¶ 2.)

In turn, MII's counsel (J. Scott Carr) personally reviewed the aforementioned data and performed calculations based on same to determine a *very conservative* AIC on only *six* of Plaintiff's claims. (Dkt. No. 1-5.) In relevant part, Mr. Carr explained the following calculations in his declaration:

Minimum Wage Claim: Because Plaintiffs allege that the putative class members spend "several minutes" working off the clock each day to comply with MII's grooming standards, MII's counsel determined an amount of unpaid minumum wages for each day worked by each putative class member. (*Id.* ¶¶ 7-8.) Counsel made this calculation by: (1) determining the number of non-overtime hours worked by MII non-exempt California employees from May 23, 2018 through July 22, 2022 (8,281,639) based on analysis of the data supplied by MII; (2) dividing this total (8,281,639) by 8 to arrive at the number of standard, eight-hour days worked (1,035,204); (3) multiplying this number (1,035,204) by three (3) minutes (3,105,614) based on Plaintiffs' allegation that each putative class member spent ***"several minutes off the clock preparing themselves for work in order to comply with Defendant's extensive personal appearance regulations."***; (4) dividing the total minutes (3,105,614) allegedly spent off the clock by 60 to arrive at the number of hours spent off the clock (51,760); and (5) multiplying the number of hours (51,760) by the average minumum wage in the years 2018 through 2022 ($12.68). This calculation proved an AIC of $656,357 on the minimum wage claim.[1] (*Id.*)

Meal and Rest Break Claims:  To calculate the meal break AIC, MII's counsel: (1) multiplied the total number of eight-hour days worked (1,035,204) by 10% (103,520) to show only a 10% violation rate; and (2) multiplied that 10% of days worked total (103,520) by the average minumum wage over the years 2018-2022 ($12.68).  This proved a 10% violation AIC of at least at least $1,312,714.00 on the meal period claim.  Although MII could have used a 100% violation rate for the rest

---

[1] This was a very conservative calculation as it underestimates: (1) the actual pay rates at issue by using only the minimum wage; and (2) the number of shifts at issue, and thus the total number of occasions (and consequently amount of time) at issue for the alleged pre-shift work.  That is, MII's calculation assumes *all* of the non-overtime hours worked were worked *only* in eight-hour shifts, despite the fact that some of those hours were worked on shorter shifts (for example, by part-time employees). Thus, there are actually *more* than 1,035,204 shifts at issue for this claim. Accordingly, because this claim is based on off-the-clock work occurring before *each shift* (regardless of duration), MII's calculation **underestimates** the total amount of time and damages at issue for this pre-shift off-the-clock claim.

1    break claim based on Plaintiffs' allegation of a uniform illegal policy, MII instead
2    used the same conservative 10% violation rate it used for the meal break claim to
3    prove an AIC of at least $1,312,714 on the rest break claim.  (*Id.* ¶¶ 9-13.)

4         <u>Wage Statement Claim</u>:  Despite Plaintiffs' generic allegations that MII's wage
5    statements provided to Plaintiffs and the putative class members were inaccurate in
6    several ways, MII conservatively estimated a violation rate of ***only <u>two</u> inaccurate***
7    ***wage statements per person during the one-year limitations period—totaling only***
8    ***$150 in penalties per person, rather than the maximum of $4,000 that Plaintiffs'***
9    ***expansive allegations justify***.  (Id. ¶¶ 15-18.)  Specifically, Counsel: (1) took the total
10   number of non-exempt employees who received wage statements within the one-year
11   limitations period (1,885); (2) multiplied that number by $50 for the initial violation
12   and $100 for one subsequent violation; and (3) combined those totals to arrive at the
13   AIC.   (*Id.*)   Using this extremely conservative methodology, the total AIC for
14   Plaintiff's inaccurate wage statement claim is at least $282,750.  (*Id.*)

15        <u>Waiting Time Claim</u>:   Because Plaintiffs' § 203 "waiting time" count
16   incorporates their allegations about daily non-payment for off-the-clock work and
17   seeks recovery of 30-days' pay for themselves and each putative class member whose
18   employment separated, Counsel calculated the AIC for this claim for each of the
19   1,219 putative class members whose employment terminated in the three years prior
20   to the filing of this action.  (*Id.* ¶¶ 19-25.)  Counsel made this calculation by:  (1)
21   identifying the 1,219 separated employees in the putative class; (2) determining *each*
22   *employee's* final hourly pay rate where available, or using only the applicable
23   *minimum wage* if an employee's final rate was not available; (3) determining whether
24   *each employee* had been separated for at least 30 days, or the exact number of days if
25   not; (4) multiplying *each employee's* daily-pay rate (or the applicable minimum wage
26   rate) by the number of days of separation (up to 30 days) to determine the amount of
27   waiting time penalties for *each separated employee*; and (5) adding those penalties
28   together to reach the total AIC.  (*Id.*)  This calculation proved an AIC of ***at least***

1  *$4,627,564 on the waiting time claim alone*.  (*Id.*)

2      <u>Cellphone Expense Claim</u>: Counsel calculated the AIC for this claim by: (1)

3  dividing the number of days worked (1,035,204) by the putative class members from

4  May 23, 2018 through July 22, 2022 by 30 to arrive at the number of months worked

5  (43,506.8); and (2) then multiplying the number of months by $20.00 to arrive at an

6  amount in controversy of at least $690,136.00.  Counsel used this methodology

7  based on recent case law from this Court.  *See Vallejo v. Sterigenics U.S., LLC*, 3:20-

8  cv-01788, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (approving $25 per

9  month to calculate AIC on unreimbursed cellphone expense claim); *Cavada v. Inter-*

10  *Continental Hotels Group, Inc.*, No. 19cv1675, 2019 WL 5677846, at *7 (S.D. Cal.

11  Nov. 1, 2019) (approving $20 per month to calculate AIC on unreimbursed cellphone

12  expense claim).  This calculation proved an AIC of at least $690,136.  (*Id.* ¶¶ 26-27.)

13      <u>Attorneys' Fees</u>: Because a 25% benchmark for attorneys' fees is routinely

14  used in wage-and-hour class action lawsuits similar to this case, and because

15  Plaintiffs' counsel regularly request and receive fee awards exceeding 25%, MII's

16  Counsel used a 25% benchmark to calculate the minimum fees in controversy here.

17  (*Id.* ¶ 28.)   Based on the total AIC for the underlying Labor Code claims of

18  $8,882,235, Counsel calculated a 25% attorneys' fee award of $2,220,558.75.  (*Id.*)

19      Altogether, MII proved a minimum AIC of $11,102,793.75.  (*Id.* ¶ 29.)

20  **D.   Plaintiffs Refuse to Respond to MII's Discovery Seeking Violation Rates**

21      On September 2, 2022, Marriott propounded Interrogatories to each of the

22  Plaintiffs seeking information relevant to, among other things, the AIC.  Notably,

23  *Plaintiff Gage did not provide any substantive responses to any of MII's discovery*

24  *requests,* instead responding to each interrogatory, request for production and request

25  for admission only with boilerplate objections.  (*See* Supp. Carr Decl., Ex. 5.)[2]

26  Plaintiff Shachno's responses were no better, as he responded only with boilerplate

27

28  [2] Plaintiffs' counsel subsequently stated that Gage will be dismissed from this case, leaving only Mr. Shachno as a Plaintiff.  *See* Dkt. No. 18 at p. 5.)

objections, followed by "cut and paste" responses that were entirely conclusory, vague and failed to provide any of the information requested. (*Id.* Ex. 4.)

For example, MII asked each Plaintiff: (1) "how often you contend that you suffered a meal break violation"; and (2) "how often you contend that you suffered a rest break violation." (*See* Supp. Carr Decl., Exs. 4, 5 at Interrog. Nos. 8, 10.) Following his boilerplate objections, Plaintiff Shachno responded to these interrogatories only with an identical, non-responsive "cut and paste" answer that was entirely vague, conclusory and failed to provide any of the information requested. (*Id.* at Ex. 4, Interrog. Nos. 8, 10.) Shachno similarly refused to provide responsive answers to, *inter alia*, MII's interrogatories seeking details regarding his alleged unreimbursed cell-phone and uniform expenses, *responding only by cutting and pasting the allegations of the Complaint*. (*Id.* Interrog. Nos. 13-14). Likewise, Shachno failed to provide a responsive answer to MII's interrogatory seeking a calculation of damages (just as he failed to comply with Fed. R. Civ. P. 26(a)(1)(iii)'s requirement that his Initial Disclosures provide "a computation of each category of damages claimed by the disclosing party . . . .") (*Id.* Interrog. No. 15; Supp. Carr Dec. and Ex. 6.)[3]

Plaintiff Shachno's responses did, however, state that:

- He spends 10 minutes before each of his shifts complying with MII's grooming standards. (*Id.* at Ex. 4 at 11:14-18.)
- Class members were "regularly working" without overtime pay. (*Id.* at 8:16-18.)
- "Defendant, ***pursuant to uniform policies and procedures, consistently required*** Plaintiffs and the Class Members to work without paying them for all time they worked . . ." (*Id.* at 8:2-4; 15:10-12; emphasis added.)
- MII ***"consistently required"*** Plaintiffs and class members to skip rest breaks. (*Id.* at 19:8-11.)

---

[3] MII has commenced meet and confer efforts regarding these deficiencies.

- MII had an unlawful policy of restricting Plaintiffs and class members from leaving the premises while taking rest breaks. (*Id.* at 19:14-15.)

Further, Shachno refers to "uniform policies and procedures" 9 times in his responses and that MII "consistently required" certain conduct 5 times. (Supp. Carr Dec. ¶ 7.)

**E.    Shachno Provides Evidence in *Shachno I* Confirming the AIC is Met Here**

On August 5, 2022, MII moved for summary judgment in *Shachno I* on claims that are, for the most part, identical to those Shachno alleges here (except for the sick-pay claim, which is not asserted in *Shachno I*). (Supp. Carr Decl. ¶ 2.) In opposing that motion, Plaintiff Shachno filed his own declaration, as well as the "Expert Declaration of Eric R. Lietzow." (Supp. Carr Decl. Exs. 2 & 3.) As relevant here, those declarations assert that *every one of MII's non-exempt employees*:

- Suffers a rest break violation every rest break due to MII's allegedly unlawful policy that purportedly restricts employees to MII's premises for their breaks. (*Id.* at Ex. 2 ¶ 5; Ex. 3 ¶ 22.)
- Spends 20 minutes working off the clock each shift due to MII's alleged grooming standards and uniform requirements. (*Id.* at Ex. 2 ¶¶ 3-4; Ex. 3 ¶ 10.)
- Suffers a wage statement violation ***every pay period*** as a result of the above violations. (*Id.* at Ex. 3 ¶¶ 33-34.)
- Suffers a violation related to reimbursement of cellphone expenses for every pay period worked. (*Id.* at Ex. 2 ¶ 8; Ex. 3 ¶ 27-28.)

The Lietzow Declaration further confirms Plaintiffs' theory that every single former California employee is entitled to waiting time penalties as a result of the aforementioned allegedly unpaid wages. (*Id.* at Ex. 3 ¶¶ 30-32.) Mr. Lietzow concluded that Plaintiffs' asserted violation rates resulted in PAGA penalties of $135,284,000. (*Id.* at Ex. 3 ¶ 36.)

Below, MII provides updated calculations of the AIC on Plaintiffs' minimum wage, rest break, and wage statement claims based on Shachno's asserted violation

rates for these same claims, and using the same methodology and data as Mr. Lietzow. Based on Mr. Lietzow's methodology, the AIC in the instant case exceeds $18 million on only four of the ten claims alleged and excluding attorneys' fees.

**1.  The AIC on the Minimum Wage Claim Exceeds $2.6 Million**

In *Shachno I*, Plaintiff Shachno contends that PAGA penalties on the minimum wage claim amount to $33,594,200. (*Id*. at Ex. 3 ¶ 13.) That calculation is based on his assertion that all of MII's non-exempt employees spent 20 minutes per workday working off the clock due to MII's grooming standards and requirement that employees be in uniform and ready to work at the start of their shifts. (*Id.* ¶¶ 10-11.)

Using the same sample punch detail used by Mr. Lietzow (*id.* ¶ 6), MII calculated an amount in controversy on the minimum wage claim of $2,650.441.23, *but only for the time period March 10, 2019 through September 19, 2021, which is substantially shorter than the 4-year statute of limitations that applies to the minimum wage claim in this case, which dates back to May 2018.* (Supp. Carr Decl. ¶ 9.) That is, MII used the punch detail to determine the number of days the employees in the 25% sample worked during the shorter time period at issue in *Shachno I* (156,769) and—again following Mr. Lietzow's methodology—multiplied that number by 4 to come up with the estimated total number of days worked by all employees in the class (627,076). (*Id.*) Like Mr. Lietzow, MII then multiplied that total number of workdays by the 20 minutes of unpaid time each day that Plaintiff Shachno asserts is reasonable for this claim, and divided that total by 60 to arrive at the number of hours of alleged off-the-clock work (209,025.33). (*Id.*) Finally, MII multiplied the estimated total number of hours worked by the average minimum wage over the class period to arrive at a minimum total of $2,650,441.23 on the minimum wage claim (and again, this only for a portion of the class period – March 10, 2019 through September 21, 2021, rather than May 23, 2018 through the date of removal). (*Id.*)

### 2. **The AIC on the Rest Period Claim Exceeds $7.6 Million**

In the present action, Plaintiffs allege that MII's rest break policy is unlawful because it restricts employees to MII's premises for their breaks, presumably resulting in a violation at every rest break. (Dkt. No. 1-2.) As noted above, Plaintiff Shachno's filings in *Shachno I* confirm that this claim does, in fact, assert that every non-exempt employee suffered a rest break violation every time they worked a shift of at least 3.5 hours (i.e., a shift that triggered MII's rest break obligation), resulting in PAGA penalties of $33,270,500. (Supp. Carr Dec. Ex. 3 ¶ 22.)

Using the same sample punch detail used by Mr. Lietzow (*id.* ¶ 6), MII calculated an amount in controversy on the rest period claim of $7,606,123.56, but *only for the time period March 10, 2019 through September 19, 2021, which is substantially shorter than the 4-year statute of limitations that applies to the rest break claim in this case*. That is, MII used the same punch detail used by Shachno's expert, Mr. Lietzow, to determine the number of days employees in the 25% sample worked more than 3.5 hours (149,963). Then, again following Mr. Lietzow's methodology, multiplied that number by 4 to come up with the estimated total number of days where employees in the putative class worked more than 3.5 hours (599,852). (Supp. Carr Decl. ¶ 10.) Then, as Plaintiff Shachno does in *Shachno I*, MII assumed a rest break violation for each of those 599,852 shifts, and therefore multiplied the 599,852 estimated shifts by one-hour of pay for a break premium (using the average minimum wage over the class period) to arrive at a minimum total amount in controversy of $7,606,123.36 on the rest break claim. (*Id.*) And again, this total is only for a portion of the class period – March 10, 2019 through September 21, 2021, rather than May 23, 2018 through the date of removal. (*Id.*.)

### 3. **The AIC on the Waiting Time Claim Exceeds $4.6 Million**

As noted above, in *Shachno I* Plaintiff confirms that, based on the underlying wage and break violations, each former MII employee is entitled to waiting time penalties. (Id. Ex. 3 ¶¶ 30-31.) MII employed that same methodology when it

1  calculated the amount in controversy on the waiting time claim in its removal papers

2  to arrive at an amount in controversy of $4,627,654.00.  (Dkt. No. 1-5 at ¶¶ 19-25.)

3      **4.  The AIC on the Wage Statement Claim Exceeds $3 Million**

4      In *Shachno I* Plaintiff confirms that, based on the underlying alleged wage and

5  break violations, each MII non-exempt employee suffered a wage statement violation

6  in *every pay period*, resulting in PAGA penalties of $33,594,200 for same.  (Supp.

7  Carr Dec. Ex. 3 ¶ 34.)  Specifically, over the approximate 185 weeks of the PAGA

8  period in *Shachno I*, Mr. Lietzow estimated there were 195,528 wage statements

9  issued (or 1,056 wage statements issued per pay week).  (*Id.* ¶ 34.)  There are 60

10  weeks in the statutory class period for this claim (May 23, 2021 through the removal

11  date) such that, using Mr. Lietzow's methodology, there would be 63,360 (60 x

12  1,056)wage statements.  (Supp. Carr Decl. ¶ 11.)  Using that same methodology, MII

13  estimates an AIC of at least $3,168,000 on the wage statement claim using only the

14  initial violation penalty of $50 per pay period.  (*Id.*)

15      **5.  Summary of AIC Using Plaintiffs' Methodology in *Shachno I***

16      The following table summarizes the AIC in this case based on the positions

17  Plaintiff Shachno, his expert, and Plaintiffs' counsel took in *Shachno I*:

| | |
|---|---|
| Minimum Wage Claim | $2,650,441.23 |
| Rest Break Claim | $7,606,123.56 |
| Waiting Time Claim | $4,627,654.00 |
| Wage Statement Claim | $3,168,000.00 |
| **TOTAL** | **$18,052,218.78** |

23  This amount does not include any amounts in controversy as to Plaintiffs' overtime,

24  meal break, or unreimbursed expenses claims, nor does it account for attorneys' fees.

25      **III.   LEGAL STANDARD**

26      CAFA gives federal courts jurisdiction over certain class actions if the class has

27  more than 100 members, the parties are minimally diverse, and the amount in

28  controversy exceeds $5 million.  *Dart Cherokee Basin Operating Co., LLC v. Owens*,

135 S. Ct. 547, 552 (2014).   In their Motion, Plaintiffs rely on an anti-removal presumption, and contend that such presumption applies here.   (Dkt. 10-1 at p. 2.) Plaintiffs are wrong, as **"no antiremoval presumption attends cases invoking CAFA,** which Congress enacted to facilitate adjudication of certain class actions in federal court." *Id.* at 554 (emphasis added).   Indeed, **"Congress intended CAFA to be interpreted expansively."** *Ibarra v. Manheim Ins., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (emphasis added).   Thus, it is incorrect to view CAFA removal "with a level of skepticism and resistance." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F. 4th 989, 993 (9th Cir. 2022).

Additionally, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th 2019).[4]   "In determining the amount in controversy, courts first look to the complaint." *Ibarra*, 775 F.3d at 1997. Where, as here, the complaint does not allege an AIC, a removing defendant may establish federal jurisdiction by pleading a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554 (citing 28 U.S.C. § 1446(a)).   Further, "in assessing the amount in controversy, a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions.'" *Arias*, 936 F.3d at 925 *quoting Ibarra*, 775 F.3d at 1199.   An assumption is "**reasonable if it is founded on the allegations of the complaint**." *Id.* (emphasis added.)   These "assumptions made part of the defendant's chain of reasoning need not be proven." *Arias*, 936 F.3d at 927; *see also Avila v. Kiewit Corp.*, 789 F. App'x 32, 33 (9th Cir. 2019) (approving use of "reasonable" "unproven assumptions").   Indeed, contrary to Plaintiffs' suggestion, MII was "not required to comb through its records

---

[4] Notably, the cases Plaintiffs rely upon predate *Arias*.  *See e.g.*, *Salazar v. Johnson and Johnson Consumer Inc.*, No. 2:18-cv-05884-SJO-E, 2018 WL 4560683 (C.D. Cal. Sept. 19, 2018); *see also Olson v. Becton, Dickinson and Co.*, No. 19cv865-MMA (BGS), 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (declining to consider cases decided prior to *Arias*).

to identify and calculate the exact frequency of violations." *Cavada v. Inter-Continental Hotels Group, Inc.*, No. 19cv1675-GPC(BLM), 2019 WL 5677846, at *4 (S.D. Cal. Nov. 1, 2019); *Oda v. Gucci Am., Inc.,* Nos. 2:14-cv-7468-SVW (JPRx), 2:14-cv-07469-SVW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (same); *see also Salcido v. Evolution Fresh, Inc*., No. 2:14-cv-09223, 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016) (same).

## IV.   ARGUMENT

### A.   MII's Minimum Wage AIC Calculation Is Conservative and Reasonable

#### 1.   <u>Plaintiffs' Ignore Their Own Express Allegations</u>

Plaintiffs' Complaint *expressly alleges* that putative class members spent "several minutes" of unpaid off the clock time each day on grooming required by MII.  (Dkt. No. 1-2 ¶ 9.)  Based on this allegation, MII determined the number of days worked by each class member during the class period and multiplied that number by 3 minutes to determine the number of minutes the class members allegedly worked off the clock on grooming standards, converted that into hours, and then multiplied those hours by the average minimum wage over the class period to arrive at an AIC of $656,357.00 on the minimum wage claim.  Similar calculations have been routinely accepted by this Court.  *See e.g., Garcia v. Acushnet Co.*, No. 3:21-cv-01581-BEN-BGS, 2022 WL 1284820, at * 3 (S.D. Cal. Apr. 29, 2022) (accepting 100% violation rate for wage claim where complaint alleges daily violations).  The use of average hourly rates is also commonly accepted.  *See e.g.*, *Vallejo v. Sterigenics U.S., Inc.*, No. 3:20-cv-01788-AJB-AHG, 2021 WL 2685348, at *5 (S.D. Cal. June 29, 2021) (approving AIC calculations using average hourly rates).

Notably, *Plaintiffs' Motion entirely ignores their express allegation that the putative class members spent "several minutes" working off the clock before each shift complying with grooming standards*.  Rather than addressing that allegation, Plaintiffs blatantly mischaracterize MII's basis for removal by falsely stating that MII's calculation was based on Plaintiffs' allegations regarding unpaid COVID

1  screenings, unpaid time spent on drug testing, and their rounding theory.  (Dkt. 10-1
2  at pp. 7-8.)  That is patently false, as MII's removal papers make clear that MII
3  considered *only* Plaintiffs' express allegation that they spend "several [*i.e.*, 3]
4  minutes" working off the clock due to MII's grooming standards.  Plaintiffs'
5  challenge to the AIC on this claim must be rejected on this basis alone.  Ironically, by
6  pointing out the numerous other ways in which Plaintiffs contend that the putative
7  class worked off the clock, Plaintiffs only confirm that MII's calculation is *very*
8  *conservative and almost certainly low*.

9      **2.   Plaintiff's Position in *Shachno I* Further Supports MII's Calculation**

10  Additionally, Plaintiff's attack on MII's AIC calculations cannot survive the
11  positions they have now formally taken in *Shachno I*, which further confirm that
12  MII's calculations are not only reasonable here, but that they are *too low*.  That is, in
13  *Shachno I*, Plaintiff Shachno assumes that every employee worked 20 minutes off-
14  the-clock on a daily basis.  (Supp. Carr Dec., Ex. 3 at ¶¶ 10-12.)  Notably, *this is more*
15  *than six (6) times the three (3) minutes MII used in its AIC calculation*.  Indeed, as
16  explained in § II.E.1 above, a revised AIC for the minimum wage claim based on the
17  methodology used in *Shachno I* increases the AIC to ***at least $2,650,441.23***.

18  Thus, in the end, an estimate of an AIC of $656,357.00 or $2,650,441.23 is
19  reasonable.  Indeed, Plaintiff Shachno's filings and arguments in *Shachno I* estop him
20  from arguing otherwise here.  *See Gagne v. Zodiac Maritime Agencies, Ltd.*, 274 F.
21  Supp. 2d 1144, 1148 (S.D. Cal. 2003) (judicially estopping plaintiff from taking
22  inconsistent position in later case).

23  **B.   MII's Meal and Rest Break AIC Calculations Were Reasonable and Low**

24      **1.   MII's Initial Calculations Were Reasonable**

25  As an initial matter, there is no question that the 10% violation rate MII used
26  for the meal and rest break claims was reasonable based on recent case law from this
27  Court.  That is, as shown in §II.D, above, Plaintiffs' discovery responses contend that
28  MII "consistently required" the putative class members to skip their breaks.  Based on

very similar allegations, this Court recently approved as reasonable a 20% violation rate for meal break claims and a 10% violation for rest period violations.  *Cavada*, 2019 WL 5677846, at \*4; *see also Long v. Destination Maternity Corp.*, No. 15cv2836-WQH-RBB, 2016 WL 1604968, at \*8 (S.D. Cal. April 21, 2016) ("Because Plaintiff does not include fact-specific allegations regarding the circumstances of the alleged missed meal and rest periods, it is reasonable for Defendant to estimate damages sought based on one meal period or rest period violation per employee per week.").  Here, MII's AIC estimate on the meal break claim was even more conservative than that approved in *Cavada*¸ as MII used only a 10% violation rate, rather than the 20% approved in that case.  The conservative nature of MII's initial calculations is further demonstrated by the facts that: (1) MII used the average minimum wage rate over the class period rather than an average hourly rate that would have been higher (Dkt. No. 1-7 ¶ 5); and (2) premiums are paid at the regular rate, which is often higher than minimum wage and base hourly rates.  Thus, MII's initial AIC calculations of $1,312,715.00 and $1,312,715.00  for the meal and rest break claims (respectively) were reasonable.[5]

## 2. Plaintiff's Complaint and Position in *Shachno I* Show the CAFA AIC Requirement is Met Based on the Rest Break Claim Alone

More importantly, Plaintiffs' arguments must be rejected because they once again entirely ignore their own allegations showing that MII's initial calculations

---

[5] Plaintiffs' argument about lack of evidence regarding premiums paid is spurious given their allegation that they did not receive premiums, as well as the fact that this is a defense issue which is not considered in AIC calculations.  *Greene v. Harley-Davison, Inc.*, 965 F.3d 767, 773-774 (9th Cir. 2020) (reversing grant of motion for remand; holding district court erred in considering merits of potential defenses for amount-in-controversy purposes for removal under CAFA); *Arias*, 936 F.3d at 928-29 (vacating and remanding district court order which remanded case to state court; rejecting argument that defenses should be considered for CAFA amount-in-controversy and explaining "the strength of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation.  Arias's argument 'conflat[es] the amount in controversy with the amount of damages ultimately recoverable;'" emphasis in original).

were actually *far too low*.  That is, while Plaintiffs attack the mere 10% violation rate MII used for its initial rest break calculation, ***Plaintiffs fail to address the allegation in their Complaint that MII's rest break policy is* per se *unlawful because it purportedly restricts employees to MII's premises for their rest breaks, resulting in a violation every time an employee is entitled to a rest break—i.e. a 100% violation rate*.**[6]  (*See* Dkt. No. 1-2 ¶ 9.)  That allegation leads to the reasonable conclusion that every day a class member worked a shift of at least 3.5 hours, he or she suffered a rest break violation.[7]  Indeed, *that is exactly the position Plaintiff Shachno has taken in Shachno I* (Supp. Carr. Decl. Ex. 3 ¶¶ 22-24.)  This results in an AIC for the rest break claim here of ***at least $7,606,123.56***. (Supp. Carr Decl. ¶ 10.)   Thus, ***the $5,000,000 CAFA AIC is satisfied here based on the rest break claim alone***.

**C.    MII's Wage Statement AIC Calculation Is Reasonable and Low**

**1.    <u>MII's Initial Calculations Were Reasonable</u>**

Without citing any authority, Plaintiffs baldly assert that their allegations of wage statement violations do not even support two violations per employee over the course of a little over one year.  (Dkt.  No. 10-1 at 12.)   Yet they specifically incorporate into this claim their allegations of: (1) a facially illegal rest policy that would result in *daily* rest break violations; and (2) *daily* unpaid grooming time— allegations that would obviously result in an inaccurate wage statement *every pay period*.  (Dkt. No. 1-2 ¶ 9.)  Notwithstanding these allegations justifying a *100% violation rate,* MII's initial calculation assumed only *two violations per year* per

---

[6] Plaintiffs' reliance on *Salazar v. Johnson and Johnson*, No. 2:18-cv-05884-SJO-E, 2018 WL 4560683 (C.D. Cal. Sept. 19. 2018), is misplaced because (1) unlike here, there was no policy like the alleged grooming policy that required daily unpaid off-the-clock time; (2) unlike here, there was no policy like the alleged violative rest break policy that resulted in daily rest break violations; (3) there was no expert evidence showing 100% violation rates; (4) the court did not reject a 10% violation rate; and (5) *Salazar* pre-dates *Arias*.

[7] This calculation also addresses Plaintiffs' arguments about length of shifts because the calculation only includes days actually worked where employees had shifts exceeding 3.5 hours.  (Supp. Carr Decl. ¶ 10.)

employee. (Dkt. No. 1-5 ¶ 18.)  *See, e.g., Vikram v. First Student Mgmt., LLC*, No. 17-cv-04656-KAW, 2017 WL 4457575, at *4 (N.D. Cal. Oct. 6, 2017) (finding defendant's 100% wage statement violation rate assumption reasonable where plaintiff alleged daily off-the-clock work); *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. EDCV 19-0839-DOC (SPx), 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019) (100% violation rate for wage statement claim reasonable because "consistent failure" to provide accurate statements could "reasonably be inferred from Plaintiff's other allegations," including defendant refusing to grant rest breaks or pay for all hours worked); *Ramirez v. Carefusion Resources, LLC*, No. 18-cv-2852-BEN-MSB, 2019 WL 2897902, at *4 (S.D. Cal. July 5, 2019) (100% wage statement violation rate not unreasonable).  Thus, MII's initial AIC calculation of $282,750.00 for this claim was not only reasonable, it was *very* conservative.

### 2.  Plaintiff's Position in *Shachno I* Confirms MII's Calculation Was Low

As shown above, in *Shachno I* Plaintiff has taken the position that every non-exempt employee suffered a wage statement violation in every pay period (*i.e.*, each of the 195,528 weekly pay periods considered by Plaintiff's expert in that case). (Supp. Carr Decl. Ex. 3 ¶ 18.)  Having argued this position to the court in *Shachno I,* Plaintiff Shachno is now bound by it here.  *See Gagne*, 274 F. Supp. 2d at 148 (judicially estopping plaintiff from taking inconsistent position in later case).

Using the same methodology Shachno uses in *Shachno I*, MII conservatively estimates an AIC of $3,168,000.00 on the wage statement claim using only the initial violation penalty of $50 per weekly pay period.  (Supp. Carr Decl. ¶ 11.)

### D.  MII's Waiting Time AIC Calculation Is Reasonable

In their purely derivative waiting time claim, Plaintiffs again incorporate their allegations of a facially illegal rest policy that would result in daily rest break violations, as well as a daily unpaid grooming time violation, and on that basis seek damages of 30 days of pay for each putative class member whose employment terminated.  (Dkt. No. 1-2 ¶¶ 112, 119.)  Based on these allegations, MII calculated

waiting time penalties for each of the 1,219 employees who separated from employment during the relevant time period.  The case law supporting that calculation is legion.  *See, e.g., Vallejo*, 2021 WL 2685348, at *5 (approving 100% violation rate for waiting time based on allegations of failure to pay wages and rest break violations); *Brumbach v. Hyatt Corp.*, No. 20-cv-2231-WQH-KSC, 2021 WL 926692, at * 10 (S.D. Cal. Mar. 11. 2021) (same); *Noriesta*, 2019 WL 7987117, at *6 (finding 100% violation rate for waiting time claim reasonable because defendant's alleged "consistent failure" to pay wages at end of class members' employment could "reasonably be inferred from Plaintiff's other allegations"); *Sanders v. Old Dominion Freight Line, Inc.*, No. 17cv2340-CAB-NLS, 2019 WL 1193836, at * 6 (S.D. Cal. Mar. 8, 2018) (approving 100% violation rate on waiting time claim where, as here, complaint sought waiting time penalties for all employees who separated employment); *Varsam v. Lab. Corp. of Am.*, No. 14cv2719 BTM (JMA), 2015 WL 4199287, at *4 (S.D. Cal. July 13, 2015) ("It is not unreasonable to assume that when class members 'regularly' worked off-the-clock . . ., every class member terminated during that time would have experienced a violation at some time and would not have been paid certain wages.").  Indeed, once again, ***in* Shachno I*, Plaintiff takes the position that every single employee who separated during the relevant period suffered a waiting time violation*.  ((Supp. Carr Decl. Ex. 3 ¶¶ 30-31.)

Give the above facts, Plaintiffs' argument that there is no justification for a 30-day penalty is frivolous.  First, Plaintiffs expressly allege that the putative class members who have separated are entitled to recover 30 days of wages as a waiting time penalty.  (Dkt. No. 1-2 ¶ 119.)  That allegation, in and of itself, is sufficient to support an AIC based on 30 days.  *See Vallejo*, 2021 WL 2685348, at *5 (approving waiting time formula using 8 hours per day for 30 days at average hourly rate).  Similarly appropriate was MII's use of: (1) the full 30 days of waiting time penalties for individuals who had been separated for over 30 days; and (2) the total number of days separated for employees who had been separated for less than 30 days at the

time of removal.  *See id.; Mortley v. Express Pipe & Supply Co.*, No. SACV 17-1938-JLS-JDE, 2018 WL 708115, at *3, 5 (C.D. Cal. Feb. 5, 2018) (approving waiting-time AIC based on 30-day calculation); *Rough v. Costco Wholesale Corp.*, No. 2:19-cv-01340-MCE-DB, 2020 WL 1158074, at *3 (E.D. Cal. Mar. 10, 2020) (same); *Moppin v. Los Robles Reg'l Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 WL 5618872, at *4 (C.D. Cal. Sept. 24, 2015) (same).

Accordingly, MII's AIC calculation of $4,627,564 was entirely reasonable.

**E.    MII's Cellphone Reimbursement AIC Is Reasonable and Low**

Plaintiffs allege that all employees were required to use their personal cellphones for MII's benefit but were not reimbursed for those expenses.  (Dkt. No. 1-2 ¶ 110.)   After determining the number of months worked by the class, MII multiplied those months by $20 to arrive at an AIC of $690,136.00.  That estimate has been recently accepted by this Court in other cases.  *Cavada*, 2019 WL 5677846, at *7 (approving $20 per month to calculate AIC on unreimbursed cellphone expense claim as being not only reasonable, but "on the conservative side" and reasonable); *Vallejo*, 2021 WL 2685348, at *6 (approving $25 per month to calculate AIC on unreimbursed cellphone expense claim).

And, yet again, the reasonable and conservative nature of MII's AIC calculation is confirmed by the position Plaintiff has taken in *Shachno I,* where he asserts a § 2802 violation for unreimbursed cell phone expenses *for every weekly pay period*.   ((Supp. Carr Decl. Ex. 3 ¶¶ 27-28.)  Using a much more conservative approach, MII only included a **monthly** amount, per the applicable case law.  (Dkt. No. 1-5 ¶ 27.)  Thus, once again, MII's AIC calculation of at least $690,136 is entirely reasonable, and Plaintiffs' argument to the contrary must be rejected.

Given the above, there is no question that the $5,000,000 AIC requirement is satisfied here.  First, MII's *initial* calculation of an AIC of $8,882,235 on the above claims was not only entirely reasonable based on the allegations of the Complaint and relevant case law, it was very conservative.  Second, MII's revised calculations

1   totaling $18,052,218.78 based on the positions Plaintiff Shachno has taken in

2   *Shachno I* are also eminently reasonable.

3   **F.     MII's Attorneys' Fees Calculations Were Reasonable and Low**

4          Though MII has already proven that CAFA's amount in controversy

5   requirement is satisfied here, it is well settled that the Court should also consider the

6   value of any attorneys' fees a plaintiff may be awarded upon successfully pursuing

7   the underlying claims.  *See*, *e.g.*, *Fritsch v. Swift Transp. Co. of Az., LLC*, 899 F.3d

8   785, 794 (9th Cir. 2018) ("Because the law entitles [plaintiff] to an award of

9   attorneys' fees if he is successful, such future attorneys' fees are at stake in the

10  litigation, and must be included in the amount in controversy.").

11         Subsequent to *Fritsch*, numerous courts in this Circuit have applied the 25%

12  benchmark when determining whether the amount in controversy requirement is

13  satisfied because, in their experience, it is a non-speculative and reliable measure of

14  likely attorneys' fees—***particularly in wage and hour lawsuits like this one***.  *See,*

15  *e.g., Vallejo*, 2021 WL 2685348, at *6 (using 25% benchmark for fees based on

16  court's experience); *Ramirez v. Benihana Nat'l Corp.*, No. 18-cv-05575-MMC, 2019

17  WL 131843, at *2 (N.D. Cal. Jan. 8, 2019) (recognizing in wage and hour lawsuit

18  removed under CAFA: "While the Court acknowledges the 25% benchmark does not

19  automatically apply in all cases [citing *Fritsch*], none of the factors counseling against

20  the application of the 25% benchmark have been raised by plaintiffs, nor does the

21  record before the Court otherwise reflect a departure from such benchmark is

22  warranted."); *Ramos v. Schenker, Inc.*, No. 5:18-cv-01551-JLS-KK, 2018 WL

23  5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("In this Court's experience, '[w]hen

24  including attorneys' fees within the amount-in-controversy for jurisdictional

25  purposes, courts in this circuit consistently use the 25% benchmark rate,' especially in

26  wage and hour class actions like this one where fee awards at settlement typically

27  require court approval. . . . [T]he 25% benchmark provides a non-speculative

28  guidepost for assessing jurisdiction."); *see also Salazar v. Johnson & Johnson*

*Consumer Inc.*, No. 2:18-CV-05884-SJO-E, 2018 WL 4560683, at *6 (C.D. Cal. Sept. 19, 2018) (applying 25% rate to non-speculative damages calculation in wage and hour lawsuit).

While the Ninth Circuit recognized in *Fritsch* that a 25% benchmark may not be appropriate in some cases where there are contractual or statutory limitations on the possible fee award, no such circumstances are present here.  899 F.3d at 797.  As such, use of a 25% rate to estimate attorneys' fees is appropriate in this case.

Additionally, the use of the 25% benchmark rate is also reasonable here given Plaintiffs' counsel's own litigation history wherein they have routinely sought and received fees of *at least* 25%.  For example, in *Ortega v. Loyal Source Gov't Serv.s LLC*, another wage-and-hour case, Plaintiffs' counsel sought and received 33*%* of a settlement amount in attorneys' fees—***more*** than the 25% benchmark. No. 3:20-cv-00879, 2022 WL 378426, at *1, 6 (S.D. Cal. Feb. 7, 2022).  Likewise, in *Alcala v. Meyer Logistics, Inc.*, Plaintiff's counsel obtained approval of a 33% fee award.  2019 WL 4452961, at *8 (C.D. Cal. June 17, 2019).  Similarly, in *Ayala v. UPS Supply Chain Solutions, Inc.*, the court approved Plaintiffs' counsel's request for a fee award totaling 33% of the settlement amount.  Case No. 5:20-cv-00117 Order Granting Motion for Attorneys' Fees, Dkt. No. 110, at 11 (C.D. Cal. Jan. 18, 2022).  These cases confirm that the attorneys' fees Plaintiffs' counsel would likely be awarded if successful here would meet or exceed the 25% benchmark.  *See, e.g., Vasquez v. RSI Home Products, Inc.*, No. 8:20-cv-01494-JWH-JDEx, 2020 WL 6778772, at *10 (C.D. Cal. Nov. 12, 2020) (denying motion to remand in wage and hour case and holding prior fee award "orders are probative of the reasonableness of [Defendant's] assumptions insofar as the orders reflect that [Plaintiff's] counsel has sought, has received approval for, and has been awarded attorneys' fees in excess of 25% in recent cases."); *Bui v. Mercedes-Benz USA, LLC*, No. 20-cv-1530-CAB-WVG,2020 WL 12688081, at *3 (S.D. Cal. Sept. 30, 2020) (denying remand and looking to

recent fee awards by plaintiff's counsel to determine reasonableness of fee estimation).

In short, there is ample support for: (1) MII's initial calculation of $2,220,558.75 (25% of $8,882,235.00) in attorneys' fees (Carr Decl. ¶ 28); and (2) MII's revised calculation of $4,513,054.70 (25% of $18,052,218.78) in attorneys' fees.  (Supp. Carr Decl. ¶ 13.)

## G.   Plaintiffs' Failure to Provide Any Alternative Evidence or Calculations Further Supports MII's Showing that the AIC Is Satisfied Here

Despite making a variety of specious challenges to MII's AIC calculations, Plaintiffs have not presented a single alternative calculation or "reasonable assumption"—let alone any evidence that undercuts MII's evidence and reasonable AIC calculations set forth in its Notice.  This failing presents an additional ground for denial of Plaintiff's Motion.  *See Noriesta*, 2019 WL 7987117, at *7 (denying motion to remand where "Plaintiff, by contrast, has not submitted evidence sufficiently challenging Defendant's assumed violation rates"); *Olson*, 2019 WL 4673329, at *4 (same).

## V.   CONCLUSION

Plaintiffs' allegations of Labor Code violations in the Complaint, combined with MII's detailed and reasonable initial calculations premised upon its authenticated business records, show that MII's initial AIC calculations were both conservative and reasonable, and that CAFA's $5,000,000 AIC requirement is easily met here. Further, subsequent evidence in the form of the positions taken by Plaintiff Shachno—*who will soon be the only Plaintiff here once Gage is dismissed*—in *Shachno I* leave no question whatsoever that the AIC requirement is satisfied here. Accordingly, MII respectfully requests that the Court deny Plaintiffs' Motion.

1

2   DATED:  October 17, 2022          KABAT CHAPMAN & OZMER LLP

3
                                      By:    /s/ J. Scott Carr
4                                            Joseph W. Ozmer II
5                                            J. Scott Carr
                                             Kristapor Vartanian
6                                            Attorneys for Defendant
7                                            Marriott International, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S OPPOSITION TO MOTION TO REMAND

1

## **PROOF OF SERVICE**

2

3

### **U.S. DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA**

4

  I am employed in the County of Fulton, State of Georgia; I am over the age of 18 and not a party to the within action; my business address is 171 17th Street NW, Suite 1550, Atlanta, Georgia 30063.

5

6

  On October 17, 2022, I served the foregoing document(s) described **DEFENDANT'S OPPOSITION TO MOTION TO REMAND** on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es): SEE ATTACHED LIST

7

8

9

☐  **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Atlanta, Georgia.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

10

11

12

13

14

☒  **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

15

16

17

☒  (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury that the above is true and correct.

18

19

  Executed on October 17, 2022, at Atlanta, Georgia.

20

21

         /s/ J. Scott Carr_____

22

         J. Scott Carr

23

24

25

26

27

28

1

**SERVICE LIST**

2

Norman B. Blumenthal

3

Kyle R. Nordrehaug
Aparajit Bhowmik

4

Piya Mukherjee

5

Charlotte James
Nicholas James De Blouw

6

BLUMENTHAL NORDEHAUG BHOWMIK DE BLOUW LLP

7

2255 Calle Clara
La Jolla, CA 92037

8

Norm@bamlawca.com

9

Kyle@bamlawca.com
AJ@bamlawca.com

10

Piya@bamlawca.com

11

Charlotte@bamlawca.com
DeBlouw@bamlawca.com

12

13

*Attorneys for Plaintiffs*
MATTHEW SHACHNO and JACKSON GAGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28